# STATE OF VERMONT

# ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| **Appeal of Walters, et al.** | } | **Docket No. 206-11-03 Vtec** |
| | } | |
| | } | |

## Decision and Order on Cross-Motions for Summary Judgment

In the above captioned matter, Appellants appealed from a decision of the Development Review Board (DRB) of the Town of Randolph (Town) granting Appellee-Applicant Vermont Pure Springs, Inc.'s application for an amendment to their 1993 conditional use permit and site plan approval. Appellants are represented by Stephanie J. Kaplan, Esq.; Appellee-Applicant[1] is represented by Michael J. Marks, Esq.; and the Town is represented by Peter M. Nowlan, Esq. W. Hugo Liepmann appeared as an interested person and represents himself.

This appeal is "on the record" as the Town has adopted and implemented the procedures necessary for such appeals, pursuant to 24 V.S.A. § 4471 and § 4472. The parties have submitted the merits of this appeal for the Court's consideration by cross-motions for summary judgment.[2] Of the issues presented in Appellants' Statement of Questions, the parties have narrowed the contested issues to the following:

(a) Whether Appellee-Applicant's operation can properly be considered a conditional use;

(b) If the application is not for a conditional use permit, whether Appellee-Applicant's use qualifies for review under Zoning Regulations (Regulations) § 2.4.3;

(c) If the application does qualify for review under § 2.4.3, whether that section is unconstitutional;

---

[1] Due to the sale of Vermont Pure Springs, Inc., this Court authorized the substitution of Micropack Corporation as the named Appellee-Applicant by Entry Order of April 20, 2004.

[2] The parties have filed motions for summary judgment and memoranda opposing each other's motions. Summary judgment may be a misleading label for such pleadings in an "on the record" proceeding, as there is no "trial" or taking of new evidence. However, until a better practice is developed and authorized by our Rules, summary judgment motions are the most effective vehicle to present the disputed legal issues to the Court.

(d) In the alternative, if the application is not for a conditional use permit, whether Appellee-Applicant's application should be considered under Regulations § 2.5.4 for an expansion of a non-conforming use, and whether that section is unconstitutional;

(e) Whether the DRB erred in granting approval for trucks with a higher maximum gallonage than was requested in Appellee-Applicant's application or discussed at the hearings; and

(f) Whether the DRB erred in granting approval for different hours of operation—including a higher number of truck trips during the daytime—than was requested in the written application or discussed at the DRB hearings.

### Factual Background

The record[3][3] for this appeal reveals the following undisputed material facts:

1.      Appellee-Applicant operates spring water collection and bottling facilities in the Town of Randolph.  Appellee-Applicant presently operates two springs off of Rogers Road near the Village of Randolph Center in the Rural Use-5 Acre (RU5) zoning district.

2.      Appellee-Applicant's springs supply water to its collection site, located approximately 0.7 miles down Rogers Road, an unpaved Class 3 town highway, northerly of Vermont Route 66.

3.      Appellee-Applicant currently conducts its business operations in the following manner:

a.      Appellee-Applicant collects water that percolates up from the springs in holding tanks.  Under the pre-existing permit, tanker trucks with an 8,000-gallon capacity are filled with the spring water at the Rogers Road site.

b.      The filled trucks then drive approximately 3.5 miles to Appellee-Applicant's bottling facility off Vermont Route 66, near Interstate 89.  The bottling facility acts as a containment, distribution, and storage warehouse where the bottled water is shipped for commercial, wholesale or retail sale throughout Vermont and New England.

---

[3][3]  The record in this appeal includes Appellee-Applicant's application of May 19, 2003, with attached cover letter, exhibits and site maps, tape recordings of the DRB proceedings on June 17, July 17, and August 19, 2003, and other exhibits itemized on the "List of Exhibits" prepared by DRB support staff.  In considering this appeal, we have also reviewed the Court file for the appeal of Vermont Pure Spring's previous application: Docket No. 234-10-02 Vtec.

c. After being emptied at the bottling facility, the trucks return to the spring site via Route 66 and Rogers Road to be refilled for the return trip to the bottling plant.

4. In addition to the two springs already in use, Appellee-Applicant proposes to develop four new springs at their 65.7-acre property on Rogers Road. Appellee-Applicant also proposes to construct two additional 15,000-gallon holding tanks and a truck turnaround area.

5. Appellee-Applicant first applied in 2002 for an amendment to its pre-existing conditional use permit to increase the volume of spring water it collected from the Rogers Road site for distribution from its Route 66 facility. After the DRB approved their application, Mr. Walters and others filed an appeal with this Court. See Appeal of Walters, et. al., Docket No. 234-10-02 Vtec (Vt. Envtl. Ct., June 13, 2003). Before that appeal was heard on its merits, however, Appellee-Applicant announced its intention to revise its 2002 application and resubmit it for review by the DRB. Appellee-Applicant's revised application for an amendment to its pre-existing conditional use permit was approved by the DRB on October 15, 2003.[4] Appellants' appeal of that DRB approval is the subject of this docket number.

6. Appellee-Applicant's 2003 revisions to its previous application addressed concerns about truck traffic between its Rogers Road property and its bottling plant, including the frequent use of large tanker trailers. Appellee-Applicant proposed using smaller single-bodied trucks that do not have a separate trailer or pivot point.

7. The capacity of the proposed trucks is slightly greater than half the capacity of trucks currently in use. Appellee-Applicant also proposed increasing the number of truck trips between the springs on Rogers Road and the bottling plant from 160 to 240 round-trip truck trips per week (or from 320 to 480 one-way weekly truck trips). See Appellants' Ex. 5, at 2. Appellee-Applicant's revised application would result in a net reduction from its 2002 application in the proposed total gallons per week that would be trucked from the springs to the bottling facility.

8. To address the effect of the increase of truck trips on neighborhood traffic, Appellee-Applicant proposed running a significant number of the truck trips at night when fewer residents use Rogers Road. Appellee-Applicant's proposal included daytime truck trips, but provided that no trucks would use Rogers Road between 6:00 A.M. and 8:00 A.M. and between

---

[4] The DRB Decision was first issued on October 7, 2003, but when someone noticed that several paragraphs were deleted from page 12 by a mistake in pagination, it was reissued on October 15, 2003.

3:00 P.M. and 6:00 P.M., when neighboring residents and the general public travel on the road most frequently.

9. Testimony at the public hearings and evidence from the record show that the use of smaller trucks, either the 4,200-gallon trucks proposed by Appellee-Applicant or the 5,000-gallon trucks referred to in Appellants' traffic report, may improve safety on Rogers Road, though that increase in safety may be offset somewhat by a corresponding increase in number of truck trips due to the use of smaller, single-bodied trucks.

10. A significant amount of testimony was offered at the public hearings in opposition to Appellee-Applicant's proposed nighttime trucking hours. This testimony established that nighttime trucking is not typical of the character of the area near Appellee-Applicant's springs. Testimony further demonstrated that Appellee-Applicant's neighbors would prefer that the trucks operate during the day because daytime traffic is more reasonable, see Testimony of Richard Osborn, Aug. 19, 2003 Hearing, Tape 1, Side A, at 650–60,[5] because "everyone has traffic during the day," Testimony of Robert White, July 17, 2003 Hearing, Tape 2, Side B, at 243, and because people "expect a certain amount of traffic during daylight hours," id. Side A, at 923–44.

11. Rogers Road varies in width from eighteen to twenty-two feet as one travels northerly from Route 66. However, that stretch of the road is also relatively straight and flat, with the exception of a ninety degree turn to the east immediately after Appellee-Applicant's access drive, which is also at the foot of a short but steep grade. Appellee-Applicant proposes some minor changes to the access drive in order for it to remain stable, but those changes are not related to its general design, nor do they affect the drive's intersection with Rogers Road.

12. The DRB determined that truck traffic on Rogers Road from Appellee-Applicant's operation does create some dust, but the Town controls dust on its roadways. The DRB found that any dust created by Applicant's increased operation does not result in material health hazards or damage to property.

13. Some testimony was offered to the DRB that Rogers Road had sections with substandard road widths. It is undisputed that the road also curves sharply to the east near Appellee-Applicant's access drive. Some residents reported hazardous conditions during mud

---

[5] While reviewing the recordings of the DRB hearings on audio cassette, it came to the Court's attention that different cassette players' counters count at different rates. The Court is using the counter readings from its cassette player, and these specific numerical references may or may not correspond to those of other cassette players.

season and some "close calls." However, further testimony suggested that Rogers Road is not made unsafe by Appellee-Applicant's proposed increase in truck traffic.

14. Notwithstanding mud season conditions typical of many unpaved roads in Vermont and those close encounters, the DRB determined that "the road capacity was adequate for the proposed use," and that the proposed increase in truck traffic on Rogers Road "does not require any additional maintenance, only routine maintenance that is typical for other similar roads." DRB Decision at 5, 7. As the DRB noted in its Findings of Fact, "Should there be burdens for road maintenance, the Town may have the ability to assess fees prior to issuing overweight vehicle permits, which is done on an annual basis." DRB Decision at 7, Finding 33. Moreover, the DRB determined, "The roads in Randolph Center, including Rogers Road, have all seen an increase in truck traffic over the years" not associated with Appelee-Applicant's business operation. Id.

15. In 1973 there were only two residences on Rogers Road between Appellee-Applicant's springs and Vermont Route 66, and there were only three farms in the area. In 1993, when Appellee-Applicant's springs were first developed, there were still only two residences along that stretch of Rogers Road and three farms in the area. Since 1993, three more houses were constructed while the three farms remained. The DRB described the character of the area as "a mixture of rural, agricultural, commercial and residential uses with much open land." DRB Decision, at 7. Testimony at the public hearings demonstrated that Appellee-Applicant's operation, including the corresponding truck traffic on Rogers Road, has been part of the character of the area since 1993.

16. After three public hearings on the record on June 17, July 17, and August 19, 2003, the Town's DRB closed public hearings, held a deliberative session, and then approved Appellee-Applicant's site plan and conditional use permit expansion, with conditions, on October 15, 2003.

### Discussion

Appellants first question whether Appellee-Applicant's spring water development can properly and constitutionally be considered as an extension of its previously granted 1993 conditional use permit. At the outset, we note that this Court previously upheld the Town DRB's decision to treat Appellee-Applicant's previous application as an amendment to the 1993 conditional use permit. See Appeal of Walters, et al., Docket No. 234-10-02 Vtec (Vt. Envtl.

Ct., June 13, 2003). The Court reasoned that the application must be considered as an amendment to the conditional use permit because the original, unappealed 1993 conditional use permit could not be challenged, directly or indirectly, and because that application did not add a different use or change the use category of the site.

The Court's reasoning regarding Appellee-Applicant's prior similar application for the same property is persuasive here, as the present application does not propose adding a new use, nor does it propose a change in use. The additional spring development proposed is neither a use not specifically permitted under Regulations § 2.4.3, nor is it an expansion of a non-conforming use under Regulations § 2.5.4. Rather, it is an application to amend the 1993 conditional use permit. Appellee-Applicant's 1993 conditional use permit is still valid, and although Appellee-Applicant's spring water production use is not specifically enumerated in the Regulations, the DRB was correct in not reevaluating the use because the 1993 permit was not appealed and therefore its validity cannot be challenged, directly or indirectly, in this proceeding.

Moreover, Appellee-Applicant's present application cannot be considered as an expansion of a non-conforming use under Regulations § 2.5.4 because the use satisfies neither the Regulations' definition of a "non-conforming use" contained in § 1.3.42, nor the applicable statutory definition in 24 V.S.A. § 4408(a)(1) (2003). Appellee-Applicant's use is not non-conforming under the Regulations because it did not legally exist upon the effective date of the Regulations pertaining to that use, December 28, 1988. The use also does not satisfy the state statute's definition because it did not exist prior to the enactment of the Town's Regulations. 24 V.S.A. § 4408(a)(1) (2003).[6] Because this application was properly considered as an amendment to an existing conditional use permit, we do not reach the questions of whether Appellee-Applicant's use qualifies under either § 2.4.3 or § 2.5.4, nor do we address the constitutionality of those sections.

Appellants next contest the condition on Appellee-Applicant's permit regarding the applicable truck size for hauling spring water from the Rogers Road springs to the bottling plant. Appellants allege that substantial evidence does not exist in the record to justify the permit condition requiring that "applicant shall only use straight-bodied trucks (no pivot point for a

---

[6] If Appellee-Applicant's application were considered under the new state statute, amended by An Act Relating to Consolidated Environmental Appeals and Revisions of Land Use Development Law, 2004, No. 115 (Adj. Sess.), Appellee-Applicant's application might be considered under the non-conformities provisions, but we do not reach that determination here. See 24 V.S.A. § 4303(15) (2004) (stating that non-conforming uses include "a use improperly authorized as a result of error by the administrative officer.")

trailer on the back) with a maximum gallonage of 5,000 gallons ± 5% for head space in the tanker." DRB Decision, at 11, Condition B.1. Appellants suggest that there was no justification for the DRB's authorization of 5,000-gallon trucks because Appellee-Applicant and the DRB only heard testimony regarding single-bodied trucks with a 4,200-gallon capacity.

In an on-the-record appeal, the factual findings of the administrative body are given great weight, although they are not immune from scrutiny. The court must determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred. See In re Petition of Town of Sherburne, 154 Vt. 596, 604-05 (1990); Appeal of Lussier and Noe, Docket No. 116-5-02 Vtec (Vt. Envtl. Ct., Sept. 16, 2002). If there was conflicting evidence, the DRB is the body charged with weighing this evidence. This Court will not disturb a DRB's factual findings if the findings are supported by substantial evidence in the record as a whole. See Appeal of Doyle, Docket No. 100-5-02 Vtec (Vt. Envtl. Ct., Jan. 21, 2003).

In reviewing the record from the DRB, we find substantial evidence in the record as a whole to justify the DRB's imposition of a condition limiting the use of trucks to those with no more than 5,000 gallons of storage. In this instance, there is no conflicting evidence on this point. Since the only evidence pertaining to the size of trucks presented at the hearings related to single-bodied trucks with either 4,200 or 5,000-gallon capacity, we find the DRB's condition regarding truck capacity reasonable and adequately supported by the record. While Appellee-Applicant, through their representative Jack Baker, only testified to using 4,200-gallon trucks to transport water from the Rogers Road springs to the bottling plant, Appellants' own traffic study, prepared by Trudell Consulting Engineers, Inc., refers specifically to Appellee-Applicant using either "4,200 or 5,000-gallon single unit trucks." See Attach. 2 to Appellee's Mem. in Opp'n to Mot. for Summ. J., at 1; see also DRB Ex. O, at 1.

On July 17, 2003, there was substantial testimony regarding Appellants' traffic study from the report's reviewer, John Pirowiski, P.E., from which the DRB could conclude that truck capacity not exceeding 5,000 gallons was warranted. Appellants seem to suggest that the 800-gallon difference in capacity has some material significance. Our review of the record did not reveal a factual basis for this assertion. In fact, our review of the record does not reveal that this assertion was even made in the proceedings before the DRB.

Because this is an application to amend a conditional use permit, 24 V.S.A. § 4407(2) allows the DRB to "attach such additional reasonable conditions and safeguards as it may deem necessary to implement the purposes of this chapter and the zoning regulations." Id. Given that evidence was presented on both 4,200 and 5,000-gallon capacity trucks, the DRB's condition relating to truck capacity was supported by substantial evidence. In fact, it appears wise to set a maximum threshold as to both capacity and trips of the trucks. It sometimes becomes problematic when a regulatory body sets a specific amount, rather than a maximum or minimum limit in its permit conditions. Here, the record is sufficient to support the maximum limit on the gallonage capacity of the trucks traveling between Applicant's facilities.

Appellants also allege that the DRB erred in approving hours different from those Appellee-Applicant proposed in its application. Appellant further argues that the evidence presented regarding the trucks' hours of operation was not substantial enough to support the DRB's conclusion that Appellee-Applicant's trucks should only run from 6:00 A.M.–9:00 P.M Monday-Friday and from 9:00 A.M.–9:00 P.M. on Saturday and Sunday.

The record reveals that Appellee-Applicant's representatives, apparently believing that they were responding to the wishes of the neighbors, initially proposed operating the water hauling trucks at times other than when Rogers Road was used most frequently by neighbors: from 6:00 A.M. to 8:00 A.M. and from 3:00 P.M. to 6:00 P.M. Following this logic, Applicant initially proposed running trucks from 8:00 A.M.–3:00 P.M and from 6:00 P.M.–6:00 A.M. Monday-Friday; all day Saturday to 6:00 A.M. Sunday morning; and from 8:00 P.M. Sunday night to 6:00 A.M. Monday. The error in this logic became very apparent at the DRB hearings, where several residents appeared to protest Appellee-Applicant's proposed nighttime trucking operations, alleging among other things that nighttime trucking created a significant disturbance and was contrary to the character of the area.

The notable opposition to the nighttime trucking regime and the considerable evidence relating to the neighbors' expectations of daytime trucking activities provide ample support for the permit condition prohibiting trucking after 9:00 P.M and limiting Appellee-Applicant's trucking to operational hours other than in the middle of the night. Testimony at the hearing established that nighttime trucking would have an adverse effect on the character of the area, see DRB hearing tapes of June 17, 2003, tape 1, side A at 872; July 17, 2003, tape 2, side A, at 923–44, side B, at 243; August 19, 2003, tape 2, side A, at 814–end, and demonstrated that residents

of Randolph Center along the trucking route from the Rogers Road springs to the bottling plant preferred traffic during hours that would not disrupt their sleeping. See DRB hearing tapes of July 17, 2003, tape 2, side A, at 923–44 (in particular, Robert White stated that people "expect a certain amount of traffic during daylight hours."); tape 2, side B, at 243; August 19, 2003, tape 1, side B, at 506, 650–60, 675; tape 3, side A, at 125.

While substantial evidence was presented in opposition to the proposed nighttime trucking, substantial evidence also indicated that Appellee-Applicant's trucks when run during daytime hours are part of the character of the area. Therefore, we find that the condition limiting Appellee-Applicant's trucking hours is reasonable under 24 V.S.A. § 4407. There is substantial evidentiary support for the trucking hours incorporated into Appellee-Applicant's amended conditional use permit.

The language of 24 V.S.A. § 1204 also does not support Appellants' argument that the section requires the notice of a hearing to state the specific subject matter of the testimony (as opposed to the subject of the hearing generally) and the specific witness who will be testifying at the hearing. The plain meaning of that unambiguous section of the Municipal Administrative Procedures Act is that the notice of a hearing only requires notice of an opportunity for all interested persons to be heard, and compliance with 24 V.S.A. § 4447, which requires that notice "be given not less than 15 days prior to the date of hearing" by the methods enumerated in that section. 24 V.S.A. §§ 1204(a), 4447(a). As long as all parties have an opportunity "to respond and present evidence and argument on all issues involved," the notice provision is satisfied. Id. at § 1204(b). Furthermore, Appellants' own traffic study, referring to the use of 5,000-gallon trucks, contradicts their argument that they did not have an opportunity to present evidence regarding the effects of that particular size of truck. See Attach. 2 to Appellee's Mem. in Opp'n to Mot. for Summ. J., at 1; see also DRB Ex. O, at 1. Thus, not only did the DRB comply with the requirements of the Municipal Administrative Procedure Act for an on the record appeal to amend a conditional use permit, but substantial evidence also exists in the record to support our conclusion that all parties had a sufficient opportunity to be heard on all material aspects of Appellant's application to amend its permit.

Accordingly, based on the foregoing, it is hereby ordered and adjudged that Appellants' motion for summary judgment is DENIED; Appellee-Applicant's motion for summary judgment is GRANTED. The DRB's decision on Appellee-Applicant's amended site plan and conditional use permit is AFFIRMED, as all conditions specifically challenged by Appellants in their pending motion are supported by substantial evidence in the record.

The Court believes that it has addressed all issues presented for consideration by the parties' pending motions, but is also aware that certain issues presented in Appellants' Statement of Questions may not have been addressed. In that regard, Appellants are to submit within thirty (30) days (i.e.: no later than Friday, November 4, 2005) a brief detailing the remaining issues and Appellants' factual and legal support for raising those issues. Any responsive motions shall be filed within fifteen (15) days of Appellants' submission. If Appellants choose not to submit this filing within thirty days, the Court will thereafter issue a Judgment Order, thereby concluding this appeal.

Done at Berlin, Vermont, this 5th day of October, 2005.

_____
Thomas S. Durkin, Environmental Judge